| | | |
|---|---|---|
| FURNITURE BRANDS | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:11CV64 JCH |
| | ) | |
| INTERIOR HOUSE, A.G., | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Interior House, A.G.'s ("Interior House" or "Defendant") Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim ("Motion to Dismiss"), filed April 12, 2011. (Doc. No. 11). The motion is fully briefed and ready for disposition.

## BACKGROUND[1]

Plaintiff FBN is a Delaware corporation, with its principal place of business in St. Louis County, Missouri. (Compl., ¶ 1). Defendant Interior House is a Swiss corporation, with its principal place of business in Switzerland. (Id., ¶ 2). FBN alleges that on or about January 1, 2008, Interior House entered into a distribution agreement with FBN's wholly owned subsidiary, Lane Furniture Industries, Inc. ("Lane"), appointing Interior House as distributor of FBN's furniture products for a specified territory of Eastern Europe ("Distribution Agreement"). (Id., ¶¶ 6, 7). FBN further alleges that Interior House entered into a separate sales agreement ("Independent Contractor

---

[1] The majority of the Court's background section is taken from Plaintiff Furniture Brands International, Inc.'s ("FBN" or "Plaintiff") Complaint, to which Interior House has not yet filed an Answer.

Agreement") with Thomasville Furniture Industries, Inc. ("Thomasville"), another division of FBN, appointing Interior House as sales representative for Thomasville and FBN within a portion of the distribution territory. (Id., ¶¶ 10, 11).

At FBN's request, Interior House executed a Letter of Credit in the amount of $350,000 ("Letter of Credit"), with FBN at its St. Louis headquarters as beneficiary. (Compl., ¶ 15; Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("FBN's Opp."), PP. 2-3 and attached Exh. 1).[2] According to FBN, throughout the parties' relationship, FBN drew on the Letter of Credit as necessary to accept payment for products delivered to Interior House pursuant to the parties' agreements. (Compl., ¶ 16). FBN further alleges that because Interior House regularly paid FBN for products delivered to its subsidiaries and/or affiliates, including OWL International ("OWL")[3], FBN was entitled to draw on the Letter of Credit to satisfy any indebtedness of OWL. (Id., ¶¶ 17-19).[4]

On or about December 9, 2010, FBN drew the amount of $249,769.74 against the Letter of Credit, in order to satisfy outstanding debt owed by OWL to FBN from past due invoices (the "OWL Payment"). (Compl., ¶ 21). Authorization for the payment was provided to Defendant's bank in Zurich by Francis X. Ward, an officer of FBN operating out of his office in St. Louis. (FBN's Opp., PP. 3-4). Interior House disputes that the Letter of Credit was to be used to satisfy the debts of OWL, and in a letter sent to FBN's employees in St. Louis on December 14, 2010, Interior House notified FBN of its belief that FBN improperly drew on the Letter of Credit in conjunction with the

---

[2] FBN maintains the terms of the Letter of Credit were negotiated through a series of e-mails sent by and to employees of FBN in St. Louis. (FBN's Opp., P. 3).

[3] Interior House denies OWL is its subsidiary or affiliate. (Motion to Dismiss, P. 2).

[4] In its response to Defendant's Motion to Dismiss, FBN asserts Interior House's representative, Andy Wettstein, agreed the Letter of Credit would cover past due and future obligations of OWL. (FBN's Opp., P. 3).

OWL Payment.  (Id., P. 4; Compl., ¶¶ 22, 23).[5]

FBN filed its Complaint in this matter on January 7, 2011.  (Doc. No. 1).  In Count I, FBN seeks a declaratory judgment determining the rights and obligations of the parties pursuant to the Letter of Credit, the Agreements, and the custom and practice between the parties, and declaring FBN acted within its rights when it drew upon the Letter of Credit to satisfy OWL's indebtedness. (Id., ¶¶ 21-26).  In Count II FBN pleads a breach of contract claim, alleging that Interior House's refusal to disburse funds to satisfy OWL's debt, and/or its demand for the return of funds appropriately obtained from the Letter of Credit, constitute a breach of the Distributor Agreement, the Letter of Credit, and/or the prior custom and practice of the parties.  (Id., ¶¶ 28-36).[6]

As noted above, Interior House filed the instant Motion to Dismiss on April 12, 2011.  (Doc. No. 11).  Interior House maintains FBN's Complaint against it must be dismissed, as this Court lacks personal jurisdiction over Interior House.  Alternatively, Interior House asserts Plaintiff's Complaint should be dismissed in its entirety and/or transferred for improper venue, or Count II should be dismissed for failure to state a claim.

## DISCUSSION

## I.     Rule 12(b)(2) Motion To Dismiss For Lack Of Personal Jurisdiction

As stated above, in its motion Interior House first contests whether this Court properly may exercise personal jurisdiction over it.  (Motion to Dismiss, PP. 1-4).  In the context of a motion to dismiss, this Court has held as follows:

---

[5] Plaintiff maintains Defendant communicated with FBN regarding the Letter of Credit and the debit at issue on several other occasions, and each time the communication was addressed to an FBN employee in St. Louis.  (FBN's Opp., P. 4).

[6] In its response, FBN asserts Defendant, "breached its unwritten agreement with FBN to cover the obligations of its affiliate."  (FBN's Opp., P. 2).

> The party invoking jurisdiction of a federal court bears the burden to show that jurisdiction exists. To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff is only required to make a prima facie showing of personal jurisdiction over the defendant. If the district court relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the party invoking personal jurisdiction, and resolve all factual conflicts in favor of that party.

Anheuser-Busch, Inc. v. City Merchandise, 176 F.Supp.2d 951, 955 (E.D. Mo. 2001) (internal citations omitted).

A federal court must engage in a two-step inquiry to determine whether it may exercise jurisdiction over a non-resident defendant. First, the Court must determine whether the cause of action arises from an activity covered by the state long-arm statute. Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010) (citations omitted). If so, the Court then must determine whether the defendant has sufficient minimum contacts with the state to satisfy due process requirements. Id.

The Eighth Circuit has held that, "[n]onresidents are subject to personal jurisdiction to the extent that state law allows." Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001) (citation omitted). "Missouri liberally construes the provisions of its long-arm statute [Mo.Rev.Stat. § 506.500] in order to exercise its jurisdiction to the fullest extent permitted by the Due Process Clause, within the specific categories enumerated by the statute." City Merchandise, 176 F.Supp.2d at 955 (internal quotations and citations omitted); see also Institutional Food Marketing Assoc., Ltd. v. Golden State Strawberries, Inc., 747 F.2d 448, 453 (8th Cir. 1984). "The legislature, in enacting this statute, sought to extend the jurisdiction of Missouri courts to numerous classes of out-of-state defendants who could not have been sued in Missouri under the preexisting law." Peabody Holding Co., Inc. v. Costain Group PLC, 808 F. Supp. 1425, 1432 (E.D. Mo. 1992) (internal quotations and citation omitted). "As such, 'the examination of whether Missouri's long-arm statute has been satisfied is coextensive with whether the assertion of personal jurisdiction over

the defendant meets the requirements of due process, and the analysis is collapsed into the single question of whether asserting jurisdiction violates the Due Process Clause.'" Meredith, Inc. v. Marketing Resources Group of Oregon, Inc., 2005 WL 2334294 at *2 (E.D. Mo. Sep. 23, 2005) (quoting Bell v. Imperial Palace Hotel/Casino, Inc., 200 F.Supp.2d 1082, 1085 (W.D. Mo. 2001)).

In analyzing whether a party's contacts with the forum state comport with the principles of due process, the Eighth Circuit has held:

> The Due Process Clause requires that minimum contacts exist between the nonresident defendant and the forum state before the court can exercise jurisdiction over the defendant. Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090-91 (8th Cir. 2008) (internal quotations and citations omitted). The defendant's contacts creating personal jurisdiction must be more than "random," "fortuitous," or "attenuated." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

In this circuit, the following five factors are examined to determine whether the requirements of due process have been met: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts[7]; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Miller, 528 F.3d at 1091 (internal quotations and citations omitted). The first three factors are

_____

[7] With respect to the quantity of contacts, the Court notes that even a single act can support jurisdiction, as long as it creates a "substantial connection" with the forum. Burger King, 471 U.S. at 475 n. 18 (citing McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957)).

primary considerations, while the last two factors are secondary. Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003).

With respect to the third factor, the Court must distinguish between specific jurisdiction and general jurisdiction. Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 819 (8th Cir. 1994) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8 & 9 (1984)). "General jurisdiction arises when a defendant's contacts with the forum state are so continuous and systematic that the defendant may be subject to suit there for causes of action entirely distinct from the in-state activities; specific jurisdiction arises when the defendant has purposely directed its activities at the forum state, and the cause of action relates to those activities." Norrise v. Union Pacific R. Co., 2008 WL 2859155 at *4 (E.D. Mo. Jul. 23, 2008) (internal quotations and citations omitted); see also Miller, 528 F.3d at 1091. FBN does not contend the basis for personal jurisdiction is the "continuous and systematic" contacts with the state required for general jurisdiction, and so the Court considers whether Interior House's contacts are sufficient for specific jurisdiction. Miller, 528 F.3d at 1091.

The parties dispute whether the nature, quality, and quantity of Interior House's contacts with the forum state were significant. For example, Interior House maintains it has never traveled to Missouri, has no place of business in Missouri, and has not taken any other action that would put it on notice it was subject to the call of a Missouri court. (Defendant's Memorandum in Support of Motion to Dismiss ("Interior House's Memo in Support"), P. 3). Defendant admits it has transacted some business with Plaintiff in Missouri, and has had oral and written communications with Plaintiff in Missouri, but denies entering into any contracts in Missouri. (Id., PP. 3-4). FBN conversely maintains Interior House negotiated and made at least one contract with individuals and entities within Missouri, and further negotiated and consummated an agreement that contemplated future contacts in the State. (Compl., ¶ 5). FBN alleges Interior House directed payment to FBN in

Missouri, for debts arising from ongoing business. (Id., ¶ 17). Finally, FBN notes that the agreement at the heart of the current dispute, i.e., the Letter of Credit, was drawn for the benefit of FBN in St. Louis, and was executed through a series of e-mails originating or ending in Missouri. (FBN's Opp., P. 5).

Upon consideration of the foregoing the Court finds that, viewing the allegations in the light most favorable to FBN, the nature, quality and quantity of Interior House's contacts with Missouri were both strong and beneficial to Interior House. For example, the Letter of Credit anticipated an ongoing business relationship between FBN in Missouri and Interior House in Switzerland, and during the course of business Interior House paid FBN in Missouri for products delivered to it or its affiliates. (Compl., ¶¶ 5, 17). Furthermore, with respect to the relation of the cause of action to Interior House's contacts with the forum state, as noted above Interior House's contacts with the forum state include executing the Letter of Credit at issue for the benefit of a Missouri corporation, through a series of e-mails originating or ending in Missouri. The relevant contacts thus directly gave rise to the instant cause of action. Therefore, the third factor strongly supports specific jurisdiction.

The secondary factors – the State's interest in providing a forum for its residents and the convenience of the parties – also weigh in favor of personal jurisdiction in Missouri. First, Missouri's interest in providing its resident, FBN, with a convenient forum weighs in favor of personal jurisdiction in the State. As noted above, FBN has its primary place of business in Missouri, where the Complaint was filed. (Compl., ¶ 1). Furthermore, the Letter of Credit was negotiated by Interior House with FBN directly in Missouri, and included FBN in its Missouri place of business as beneficiary. (Id., ¶¶ 15-16; FBN's Opp., attached Exh. 1, P. 5).[8] Second, the convenience of the

---

[8] In arguing Missouri does not have an interest, Interior House focuses on the Distribution Agreement and the Independent Contractor Agreement, and contends the State has no interest because those agreements were neither executed between Plaintiff and Defendant, nor executed in

parties factor is, at best, neutral for jurisdiction. In other words, each party's witnesses and records are located primarily in their respective forums, and Plaintiff understandably chose to file the Complaint in its home forum. Thus, while it may be more convenient for Interior House to litigate this claim outside of Missouri, it does not appear to violate Defendant's due process rights to subject it to jurisdiction here. See Angelica Corp. v. Gallery Mfg. Corp., 904 F.Supp. 993, 997-98 (E.D. Mo. 1995) ("However, there is no showing that any inconvenience to the defendant outweighs the other factors which cut in favor of specific personal jurisdiction in this case.").[9]

In light of the foregoing, the Court concludes that Interior House's contacts with Missouri amount to the minimum contacts required by due process, and allow this Court to exercise personal jurisdiction over it. Accordingly, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction will be denied.

## II.    Rule 12(b)(3) Motion To Dismiss For Improper Venue

As stated above, Defendant also filed a motion to dismiss for improper venue pursuant to FRCP 12(b)(3), or in the alternative, to transfer venue pursuant to 28 U.S.C. § 1406. (Motion to Dismiss, PP. 4-6). Defendant relies on the venue requirements of 28 U.S.C. § 1391(a), which provide in relevant part:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…

Missouri. (Interior House's Memo in Support, P. 5). In so arguing, however, Interior House disregards the Letter of Credit that forms the basis of Plaintiff's cause of action.

[9] Defendant apparently argues that jurisdiction would be proper in Pittsburgh, Pennsylvania, because that is where the bank that processed the Letter of Credit draw request is located, and where Defendant alleges FBN misrepresented the nature of the Letter of Credit. (Motion to Dismiss, P. 4; Interior House's Memo in Support, P. 8). The Court notes this scenario would result in an inconvenient forum for both parties, however, and Interior House still would have to travel from Switzerland to the United States to defend the action.

Id. In support of its Motion to Dismiss, Defendant argues that a substantial part of Plaintiff's claim did not occur in Missouri, but instead occurred in Pittsburgh, Pennsylvania, where Plaintiff allegedly misrepresented the nature of the Letter of Credit. (Interior House's Memo in Support, PP. 7-8).

Without deciding whether a substantial part of Plaintiff's claim occurred in Missouri, the Court notes that Interior House is a Swiss company, and thus subject to 28 U.S.C. § 1391(d), providing that "[a]n alien may be sued in any district." § 1391(d) embodies the long-established principle that aliens are not subject to the restrictions of federal venue laws. Brunette Mach. Works, Ltd. v. Kockum Industries, Inc., 406 U.S. 706, 713 (1972). Therefore, even if § 1391(a) presented an obstacle to venue on these facts, Interior House's status as an alien prevents a finding of improper venue.

In addition, the Court notes that because venue is proper, 28 U.S.C. § 1406(a) does not apply. § 1406(a) allows for transfer in the interest of justice only for cases "laying venue in the wrong division or district." In other words, § 1406(a) only "provides for the dismissal or transfer of cases for improper venue." Luebbert v. Employers and Operating Engineers Local 520 Pension Fund, 2007 WL 1100455 at *5 (E.D. Mo., Apr. 10, 2007).[10] As noted above, venue for this matter properly lies in Missouri, and so Interior House's Motion to Dismiss for Improper Venue, or Transfer pursuant to § 1406(a), must be denied.

## III. Rule 12(b)(6) Motion To Dismiss For Failure To State A Claim

Finally, as stated above Defendant moves to dismiss Count II of Plaintiff's Complaint for failure to state a claim upon which relief may be granted. (Motion to Dismiss, PP. 6-7). Federal Rule

---

[10] In cases where venue is proper, 28 U.S.C. § 1404(a) allows transfer of a case "[f]or the convenience of parties and witnesses" to another district "where it might have been brought." § 1404(a) would not support transferring this case to Pennsylvania, however, as neither party is located in or has witnesses in that State, and Interior House likely is not subject to personal jurisdiction in that state on the facts alleged in the Complaint.

of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In ruling on a motion to dismiss, the Court must view the allegations in the complaint in the light most favorable to the Plaintiff. <u>Eckert v. Titan Tire Corp.</u>, 514 F.3d 801, 806 (8th Cir. 2008) (citation omitted). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." <u>Coons v. Mineta</u>, 410 F.3d 1036, 1039 (8th Cir. 2005) (citations omitted). To survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Satisfying this obligation requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555 (citation omitted).

In its Motion to Dismiss, Defendant argues that because Plaintiff was not in privity of contract with Defendant with respect to either the Distribution Agreement or the Independent Contractor Agreement, it cannot prove a breach of contract entitling Plaintiff to relief. (Interior House's Memo in Support, PP. 9-10).[11] Plaintiff counters that it has not alleged a breach of the Distribution Agreement or the Independent Contractor Agreement, but instead has alleged a breach of Defendant's "agreement to 'settle any outstanding indebtedness of OWL International.'" (FBN's Opp., P. 14).[12] While the Court agrees Count II of Plaintiff's Complaint is not a model of clarity, and may be subject to future attack in the context of a motion for summary judgment, it does not find dismissal of the Count appropriate at this time. Defendant's Motion to Dismiss pursuant to FRCP

---

[11] Defendant asserts there exists no privity of contract because the Distribution Agreement was between Defendant and Lane, and the Independent Contractor Agreement was between Defendant and Thomasville. (Interior House's Memo in Support, P. 9).

[12] FBN maintains the parties' agreement, "was not formally memorialized in a fully-integrated document," but instead, "arose out of a series of oral and written communications between the parties, combined with a course of dealing that established Defendant's obligation to pay FBN for products it shipped to Defendant's affiliated entity, OWL." (FBN's Opp., P. 14).

12(b)(6) will therefore be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Interior House, A.G.'s Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim (Doc. No. 11) is **DENIED**.

Dated this 20th day of July, 2011.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE